UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KATHRYN COX, et al., | CASE NO. C13-2288 MJP |
| Plaintiffs, | ORDER DENYING MOTIONS FOR RECONSIDERATION |
| v. | |
| CONTINENTAL CASUALTY COMPANY, | |
| Defendant. | |

THIS MATTER comes before the Court on Continental's Motion for Reconsideration of various discovery issues (Dkt. No. 68) and the Cox Plaintiffs' Motion for Reconsideration (Dkt. No. 70) of the Court's Order (Dkt. No. 56) on Continental's Motion to Dismiss (Dkt. No. 13). Having considered the motions and all related papers, the Court hereby DENIES both motions for reconsideration.

**Background**

This case was brought by the Cox Plaintiffs, assignees of Dr. Duyzend, against Dr. Duyzend's insurer, Continental Casualty Company, alleging bad faith and related issues with

respect to Continental's failure to settle claims by the Cox Plaintiffs and other patients in their dental malpractice suit against Dr. Duyzend. On May 16, this Court issued an order granting in part and denying in part Continental's Motion to Dismiss (Dkt. No. 13) and disposing of various discovery issues. (Dkt. No. 56.) Continental now brings a Motion for Reconsideration challenging two discovery issues (Dkt. No. 68), and the Cox Plaintiffs bring a Motion for Reconsideration challenging the Court's dismissal of their Insurance Fair Conduct Act claim (Dkt. No. 70.)

**Discussion**

I.  Legal Standard

Pursuant to Local Rule 7(h)(1), motions for reconsideration are disfavored, and will ordinarily be denied unless there is a showing of (a) manifest error in the ruling, or (b) facts or legal authority which could not have been brought to the attention of the court earlier, through reasonable diligence.

II.  Continental's Motion

Continental recycles two arguments from its initial motion to dismiss. First, Continental argues that causation expands the scope of relevancy in a bad faith claim so that documents relating to the parties' willingness to settle become "vital" even though subjective attitudes toward settlement play no part in the conduct giving rise to liability. (Dkt. No. 68 at 2–3.) The Court previously analyzed this exact question. (Dkt. No. 56 at 12–13.) Continental cites no new authority on this question, but merely insists that this Court's conclusion that the proximate cause of the excess judgment can be adequately proven or disproven using non-privileged communications amounted to manifest error. Moreover, Continental fails to wrestle with the only 9th Circuit case on point, <u>Home Indem. Co. v. Lane Powell Moss & Miller</u>, 43 F.3d 1322, 1326–

27 (9th Cir. 1995), which applied Alaska law to hold in the face of an explicit causation argument that subjective willingness to settle is not sufficiently vital to meet the third prong of the issue injection test where there was evidence that the plaintiff made an offer to settle—as an attorney representing a plurality of Dr. Duyzend's patients did here. Continental's argument fails to reveal manifest error in the Court's ruling.

Second, Continental contends the Court erroneously failed to address its argument regarding a waiver of attorney-client privilege that allegedly occurred when Continental told Plaintiffs to acquire attorney-client privileged materials from Dr. Duyzend's attorneys and Mr. Harper handed over the documents. The Order did not address the waiver argument because regardless of any waiver, documents sought to be compelled must first be relevant and reasonably calculated to lead to the discovery of admissible information. Fed. R. Civ. P. 26(b). Mr. Harper's allegedly privileged documents are not, for reasons discussed in the initial Order. (Dkt. No. 56 at 14–15.) Continental does not attempt explain how the documents might have newly acquired relevance a few weeks later. Continental further misapprehends the reason the Court discussed the Pappas standard for issue injection—it was because Continental relied on that standard in its "alternative argument" (Dkt. No. 56 at 15; see Dkt. No. 48 at 11–13), not because the Court believed vital importance was the standard for either discoverability or waiver by disclosure. The Court need not modify the original Order on the grounds suggested by Continental.

III.   Cox Plaintiffs' Motion

The Cox Plaintiffs argue that in the absence of any standing argument from Continental with respect to the IFCA claim, they did not have a chance to argue that "first party claimant" as used in the IFCA can apply to an insured with a third-party insurance contract as long as the

ORDER DENYING MOTIONS FOR
RECONSIDERATION- 3

party bringing the claim is a first party with respect to the contractual rights (via assignment from the original insured, for example). (Dkt. No. 70 at 2–4.) Plaintiffs take advantage of the Motion for Reconsideration to propound this argument. But their contention is easily answered by resort to the text of the statute, which defines "'[f]irst-party claimant'" as "an individual, corporation, association, partnership or other legal entity asserting a <u>right to payment</u> as a covered person under an insurance policy or insurance contract or insurance contract <u>arising out of the occurrence of the contingency or loss</u> covered by such a policy or contract." RCW 48.30.015(4) (emphases added). As the Court previously noted in the Order on the Motion to Dismiss (Dkt. No. 56), Washington law clearly distinguishes between first and third-party insurance: "Third-party coverage 'indemnif[ies] an insured for covered claims which others [third-party claimants] file against him.' By contrast, first-party coverage 'pay[s] specified benefits directly to the insured when a "determinable contingency" occurs,' 'allow[ing] an insured to make her own personal claim for payment against her insurer.'" <u>Mut. of Enumclaw Ins. Co. v. Dan Paulson Const., Inc.</u>, 161 Wn.2d 903, 914 n.8 (2007) (citing Thomas W. Harris, <u>Washington Insurance Law</u> § 1.2 (2d ed. 2006)). Plaintiffs contend the Court has conflated "first party claimant" with first party coverage—"i.e., a claim that must be paid directly to the insured such as property damage under a homeowner[']s policy" (Dkt. No. 70 at 3)—but they fail to recognize that the text of the IFCA defines "first party claimant" in a narrow way that applies only to first-party insurance. In the definition, the IFCA requires the claimant to hold a policy requiring the insurer to "pay[ ]" benefits to that individual or entity upon the occurrence of a "contingency or loss." <u>See</u> RCW 48.30.015(4). Third-party insurance such as a malpractice policy does not conform to this definition, which is why it seemed awkward to say that Dr. Duyzend was ever denied a "payment of benefits" by Continental. RCW 48.30.015(1).

Plaintiffs cite <u>Trinity Universal Ins. Co. of Kansas v. Ohio Cas. Ins. Co.</u>, 176 Wn. App. 185, 200–01 (2013) to argue the "first party" phrase in the IFCA merely requires claims to be brought by the insured or the insured's assignee, rather than a third party. The definition of "first party claimant" does so limit the class of persons who may bring suit under the IFCA, according to <u>Trinity</u>. But that fact does not mean the class is not further limited, and the definition concerning the insured's "right to payment" and insurance coverage triggered by the "occurrence of [a] contingency or loss" narrows the class to first-party insurance policies as well.

Plaintiffs also cite <u>Tim Ryan Constr., Inc. v. Burlington Ins. Co.</u>, 2012 WL 6567586 (W.D. Wash. Dec. 17, 2012), as an example of a court applying the IFCA provision at issue to a third-party insurance contract. While the federal district court in <u>Tim Ryan</u> did apply the IFCA to a third-party insurance contract, it did not discuss whether the insured in that case qualified as a "first party claimant" as the IFCA defines the term.

Finally, Plaintiffs point out that the WAC's enumerated "specific unfair claims settlement practices" constitute a per se violation of paragraphs (2) and (3) of the IFCA. <u>See</u> RCW 48.30.015(5). However, the standing requirement that the party be a "first party claimant" is found in paragraph (1), and the definition of "first party claimant" is found in paragraph (4). Paragraphs (2) and (3) do not give rise to liability under the IFCA in the absence of the standing conferred by paragraph (1), and the fact that parties may encounter WAC violations that fall short of IFCA violations is not statutory surplussage merely because some plaintiffs lack standing under other, nonwaivable requirements of the IFCA.

ORDER DENYING MOTIONS FOR
RECONSIDERATION- 5

**Conclusion**

Because neither Plaintiffs nor Defendant has shown manifest error or new facts or authority mandating reconsideration, the Court DECLINES to reconsider either the dismissal of the IFCA claim or the discovery issues discussed above.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 6th day of June, 2014.

Marsha J. Pechman
Chief United States District Judge